**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**MARK TOLBERT,**

**Petitioner,**

**v.**

**COOPERATIVA DE SEGUROS**
**MÚLTIPLES DE PUERTO RICO,**

**Respondent.**

**Misc. No. 24-00007 (ADC)**

<u>**OPINION AND ORDER**</u>

**I.    Introduction**

In September of 2017, Puerto Rico suffered through the passage of two major hurricanes, Irma and María. In particular, Hurricane María made landfall on September 20 and is estimated to have caused billions of dollars in damages. Many residents whose properties were affected sought compensation from their insurance companies with mixed results. The Puerto Rico Legislature, responding to significant delays in the insurance adjustment and payment processes as well as concerns as to the prevalence of certain unfair insurance practices, enacted several laws aimed at providing relief to the beleaguered property owners. Two of these statutes are relevant here: Puerto Rico Acts Nos. 242-2018 and 247-2018.

Concretely, what is before the Court is petitioner Mark Tolbert's ("petitioner") "Motion to Confirm and Enforce Binding *Appraisal Award*" filed on January 9, 2024. **ECF No. 1**. Petitioner seeks judicial confirmation of an award issued in its favor by an arbitrator under a state-

regulated process of insurance appraisal, implemented pursuant to Act No. 242-2018. The arbitrator found that petitioner's property damages amounted to $589,649.10. Petitioner also seeks legal costs and attorney's fees pursuant to a specific provision of Act No. 247-2018.

Respondent, Cooperativa de Seguros Múltiples de Puerto Rico ("respondent"), initially refused to pay petitioner and sought to challenge the appraisal award. After several procedural developments, including a parallel vacatur proceeding initiated by respondent that petitioner later removed to this District Court, respondent dropped its opposition to the award and deposited the full amount with the Court in the above-captioned proceeding. Respondent, however, maintains that it should not be forced to pay petitioner any attorney's fees or costs given that it no longer opposes confirmation and payment of the award.

Petitioner's motion raises two questions that merit in-depth analysis. First, whether the appraisal award is confirmable as an arbitration award under Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9. After a review of the underlying characteristics of the appraisal procedure, the Court answers that question affirmatively and will issue judgment confirming the award. The second question is whether, having confirmed the award in favor of petitioner, the Court is bound to also award reasonable attorney's fees, and if so, in what amount. After a review of the applicable law, the Court concludes that an award of attorney's fees is required under Act 247-2018, and that a reasonable amount for this case would be 25% of the judgment amount.

Accordingly, for the reasons explained below, the Court **GRANTS** petitioner's motion at **ECF No. 1** and awards a total of $154,241.67 in reasonable attorney's fees, amount which shall be included in the judgment confirming the appraisal award.

## II.    Procedural Background

On January 9, 2024, petitioner filed his "Motion to Confirm and Enforce Binding *Appraisal Award*." **ECF No. 1**. Respondent appeared on January 17, 2024 and initially sought a stay of plaintiff's motion due to the pendency of its own motion to vacate the award in a parallel proceeding in this District. *See* **ECF No. 3** (citing proceedings in *Cooperativa de Seguros Múltiples de Puerto Rico v. Floridian Public Adjusters, LLC, et al.*, Civ. No. 23-1615 (JAG) (D.P.R.)). Respondent's motion to vacate was initially before the Puerto Rico Court of First Instance but petitioner later removed it to the District Court on December 18, 2023. *See* Civ. No. 23-1615, ECF No. 1. On January 26, 2024, respondent moved to voluntarily dismiss that proceeding. *Id.*, ECF No. 15. And on the same day, respondent deposited the amount of the award with the Court in the above-captioned proceeding. *See* **ECF No. 5**.[1] Thus, on February 2, 2024, respondent withdrew its motion for stay as moot given its voluntary dismissal in the parallel vacatur proceeding and its deposit of the funds in this proceeding. **ECF No. 8**. Respondent did not otherwise move to oppose petitioner's request for confirmation of the appraisal award.

---

[1] Although the motion was styled as a motion for "consignation," it did not meet the legal requirements necessary for consignation under the applicable law. This Court's Orders granting respondent's "motion to deposit funds" at **ECF Nos. 5** and **15** do not validate the deposit of funds as a "consignment."

On February 9, 2024, petitioner filed a response to respondent's motion and sought entry of default judgment: (i) confirming the award, (ii) awarding it an additional $27,317.66 in default interest, and (iii) ordering respondent to pay it reasonable attorney's fees. **ECF No. 9**. Respondent opposed the request that same day, arguing that it was not in default. **ECF No. 10**. It also argued that the deposit of funds had turned the case moot and that it had no objection to their withdrawal in satisfaction of the award. *Id.* Respondent further acquiesced to the payment of post-award interest and informed that the parties had already reached an agreement as to their calculation. *Id.* Notwithstanding, respondent opposed the request for attorney's fees because, in its view, petitioner could not be characterized as being a "prevailing party" in this case. *Id.*

Petitioner then replied on February 28, 2024 and argued that the case was not moot because: (i) it is entitled to finality on its award given that the parallel vacatur proceedings were dismissed without prejudice, (ii) whether it is entitled to attorney's fees remains a live controversy between the parties, and (iii) respondent's request that the Court deem its obligation to petitioner to be fulfilled requires judicial determination, reason for which it would be a prevailing party upon entry of judgment. **ECF No. 13**. On March 4, 2024, respondent deposited an additional $27,812.66 with the Court, representing the agreed amount of post-award interest as well as $495.00 for a "Bill of Cost awarded in a different matter." **ECF No. 14**. Respondent filed a sur-reply on March 12, 2024, reasserting its opposition to the request for attorney's fees. **ECF No. 21**. Finally, on March 27, 2024, petitioner filed a motion submitting a

proposed judgment and informing of the nature of the "Bill of Cost" amount deposited by respondent.[2]

The matter thus submitted, the Court then issued a series of orders. First, that petitioner clarify its domicile for purposes of establishing the Court's jurisdiction. **ECF No. 23**.[3]  Second, that petitioner submit a translation of an applicable Puerto Rico law for the Court's consideration. **ECF No. 27**. Third, the Court gave the parties the opportunity to submit optional briefs on whether the appraisal award at issue is an arbitration award. **ECF No. 28**.[4] Finally, the Court also invited the parties to state a position on the appropriate amount for reasonable attorney's fees if it were to grant petitioner's request for such relief. **ECF No. 33**. The parties complied with all the aforementioned orders. *See* **ECF Nos. 29, 30, 31, 32, 34, 35**.

## I.     Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),[5] was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepción*, 563

---

[2] The Court had ordered respondent to explain how the "Bill of Cost" amount related to the case. **ECF No. 20**. Respondent did not clarify, but petitioner explained that these costs referred to those taxed by the Clerk of Court in the parallel vacatur proceedings. **ECF No. 22**.

[3] Petitioner asserted that he resides in Canandaigua, New York, and alleged that respondent is organized pursuant to the laws of, and has its principal place of business in, the Commonwealth of Puerto Rico. **ECF No. 1** at 2, ¶¶ 5-6. It is well known that "[j]urisdictionally speaking, residency and citizenship are not interchangeable." *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 361 n.1 (1st Cir. 2001). In response to the Court's order, petitioner clarified that his domicile was in the State of New York, thus making him a citizen thereof. *See* **ECF No. 29**.

[4] Both parties, beginning with respondent, devoted several pages of their optional briefs to the matter of the granting of attorney's fees, even though that was not a matter on which the Court authorized additional briefing.
[5] The FAA was originally called "The United States Arbitration Act." *See* Pub. L. No. 68-401, 43 Stat. 883 (1925). In 1947, Congress reenacted and codified the statute, now referred to as the FAA, in title 9 of the U.S. Code. *See* Pub. L. No. 80-282, 61 Stat. 669 (1947).

U.S. 333, 339 (2011). It provides, principally, for the enforcement of commercial arbitration agreements. *See* 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (describing Section 2 as "the primary substantive provision of the [FAA]"). But it also provides for several downstream remedies in aid of arbitration, including judicial confirmation, vacatur, modification or correction of arbitral awards. 9 U.S.C. §§ 9, 10; *see Badgerow v. Walters*, 596 U.S. 1, 4 (2022) ("[U]nder Sections 9 and 10 [of the FAA], a party may apply to the court to confirm, or alternatively vacate, an arbitral award."). The Court must grant a request to confirm an arbitration award "unless the award is vacated, modified, or corrected" under Sections 10 or 11 of the FAA. 9 U.S.C. § 9.

## II.    Discussion

Because the parties are diverse, and the controversy exceeds $75,000, the Court has jurisdiction over petitioner's request for confirmation. *See* 28 U.S.C. § 1332(a)(1); *Badgerow v. Walters*, 596 U.S. at 9 ("If [the application for confirmation] shows that the contending parties are citizens of different States (with over $75,000 in dispute), then § 1332(a) gives the court diversity jurisdiction."). Therefore, there are only two live issues for the Court to consider. First, whether the appraisal award is an arbitration award under the FAA. Second, whether an additional amount for reasonable attorney's fees is warranted under the applicable law. Each is addressed in turn below.

**A. Whether the insurance appraisal procedure is an arbitration.**

Petitioner's motion relies on this Court's statutory authority to confirm arbitration awards under Section 9 of the FAA, 9 U.S.C. § 9. The necessary and antecedent question is whether the appraisal award here is an arbitration award for purposes of the FAA.

The First Circuit addressed a similar situation in *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004), and its holding controls the analysis. In *Fit Tech*, the First Circuit held that a provision in an asset purchase agreement providing for final and binding dispute resolution by designated accountants was an arbitration agreement in the sense of Section 2 of the FAA. *Id.*, at 6-7. To get to this conclusion, the First Circuit first took the position that "[w]hether the accountant remedy is 'arbitration' under the federal statute is a characterization issue, which in our view is governed by federal law" as opposed to substantive state law. *Id.*, at 6.[6] The reason being that "[a]ssuredly Congress intended a 'national' definition for a national policy." *Id.*

Diving into the analysis, the First Circuit held that "the question is how closely the specified procedure resembles classic arbitration and whether treating the procedure as

---

[6] This allows the Court to forgo any analysis under *Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938), on whether appraisals are arbitrations for purposes of Puerto Rico general contract law, its then current arbitration statute, the Commercial Arbitration Act, Act No. 376 of May 8, 1951, P.R. Laws Ann. t. 32, § 3201 *et seq.*, or its replacement, the Puerto Rico Arbitration Act, Act No. 147-2024, which entered into force on February 5, 2025. However, that also means that the Court's analysis here under the FAA is presumably inapplicable where a party seeks to enforce an appraisal award pursuant to a state arbitration statute, in which case state law would determine whether an appraisal is an arbitration or not. *See, e.g., B.R.S. Real Estate, Inc. v. Certain Underwriters at Lloyd's, London*, 110 F.4th 442 (1st Cir. 2024) (applying Rhode Island arbitration law to motion to confirm appraisal award in case removed from state court and brought under state law).

arbitration serves the intuited purposes of Congress." *Id.*, at 7. It went on to consider that the "accountant remedy" at issue there presented certain "common incidents of arbitration of a contractual dispute:" (1) it was a final and binding remedy, and provided for (2) an independent adjudicator, (3) substantive standards, and (4) an opportunity for each side to present its case. *Id.*; *see also Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan., Inc.*, 390 F.3d 684, 689 (10th Cir. 2004) (citing *Fit Tech* approvingly); *Sound Inpatient Physicians, Inc. v. Carr*, No. 20-6440, 2021 WL 3399642, at *2 (6th Cir. Aug. 4, 2021) (same). However, the "accountant remedy" did not provide for the resolution of the whole of the dispute, just the accounting portion. *Id.* Even so, the court of appeals held that this was no impediment to recognizing its arbitral nature: "[A]rbitrations sometimes do cover only a part of the overall dispute between the parties." *Id.* (citations omitted). In the end, the First Circuit held that "[t]o us, [the accountant remedy] is arbitration in everything but name." *Id.*

With this framework in mind, the Court proceeds to analyze the appraisal process that resulted in the award object of petitioner's motion to confirm, beginning with the appraisal process established by Act No. 282-2018 and its implementing regulation.[7]

---

[7] The Court notes that *Fit Tech*'s framework was applied to a contractually agreed-upon dispute resolution mechanism, whereas the mechanism here stems from the operation of law. But because Act 242-2018 is retroactive, it is as if an appraisal clause was inserted into the insurance policy. *See Consejo de Titulares del Condominio Acquamarina v. Triple-S Propiedad, Inc.*, 210 P.R. Dec. 344 (P.R. 2022) (declaring Act No. 242-2018 retroactive) (English-language translation pending). And in any case, both parties agreed to submit themselves to appraisal. **ECF No. 1** at 3, ¶ 10. Thus, the Court sees no problem in applying *Fit Tech*'s framework to the appraisal process established by Act No. 242-2018.

1.    Act No. 242-2018: the appraisal process.

Puerto Rico's Act No. 242-2018 amended Articles 11.150 and 11.190 of the Puerto Rico Insurance Code, P.R. Laws Ann. t. 26, §§ 1115, 1119, to provide for the mandatory inclusion of appraisal clauses in all personal or commercial property insurance contracts and to establish the appraisal process. *See* Act No. 242-2018, §§ 2 and 3 (certified English translation of Act No. 242-2018 at **ECF No. 31-1**). Article 11.190(3) specifically allows for the submission "to an impartial and competent arbitrator the resolution of disputes over the valuation of damages or loss in a claim which the insurer has agreed to cover." Act No. 242-2018, § 3 (**ECF No. 31-1** at 4). It further defines "arbitrator" as "an impartial and competent party selected, within the appraisal process, to resolve disagreements exclusively related to the value of a loss or damage in one or more items of the claim in" a commercial or personal property insurance policy. *Id.* (**ECF No. 31-1** at 4-5). Importantly, the statute is clear in that the arbitrator "shall have no authority to decide coverage disputes or any question of law." *Id.* (**ECF No. 31-1** at 5). The statute also added a new Article 9.301 to the Insurance Code, P.R. Laws Ann. t. 26, § 951r, that establishes the qualifications for persons acting as "arbitrators" in appraisal proceedings. *Id.*, § 1 (**ECF No. 31-1** at 3).

Article 11.190(3), moreover, authorized the Office of the Commissioner of Insurance of Puerto Rico to establish rules necessary to regulate the appraisal process. *Id.*, at § 3 (**ECF No. 31-1** at 5). The applicable regulations are contained in the Commissioner's Ruling Letter No. CN-

2019-248-D ("Ruling Letter"), an English-language version of which is attached to petitioner's motion to confirm. *See* **ECF No. 1-1** at 42-49.

The Ruling Letter fleshes out the appraisal process established in Article 11.190(3). For example, Section B of the Ruling Letter, titled "Nature of the appraisal process," lays down certain principles underpinning the process, among them:

> 1. The appraisal process is an alternate informal conflict-resolution method, in which the parties submit in good faith to an impartial and competent arbitrator for the resolution of disputes related to the appraisal of damages or losses in a claim.
>
> …
>
> 4. All oral or written information provided during the appraisal process, including the documents and working records of the parties that are involved in the process, shall be confidential and privileged. Said information or documentation may not be required for production in court or administrative proceedings, nor may the arbitrator be called to testify regarding the content thereof or regarding the proceedings before the arbitrator.
>
> 5. The decision that the arbitrator may make in the appraisal process will be binding when two (2) of the three (3) parties (the insured's appraiser, the insurer's appraiser, and the arbitrator) reach an agreement, without prejudice with regard to an unsatisfied party being able to turn to the Court of First Instance to challenge the decision.

Ruling Letter, **ECF No. 1-1** at 44.

Section D provides further specificity on the appraisal procedure.[8] After one party notifies the other of its intent to submit to appraisal, both the insurer and the insured must designate their respective appraiser "to represent them during the appraisal process." *Id.*, at 45. It then

---

[8] In what seems to be a typographical error, the document jumps from section "B" to section "D", omitting a section "C".

requires both appraisers to meet to attempt to reach an agreement on "the value of the loss or

damages in the claim or items of the claim in controversy." Failing such agreement, an "impartial

and competent arbitrator" is chosen either by mutual accord or by the Commissioner. Once

selected, the arbitrator "will review the documents, photos, estimates, expert reports, itemized

lists, and amount in dispute," may inspect the property in dispute, and may also make "his or

her own estimate." The proceedings before the arbitrator are held informally, and the arbitrator

has the power to "set the date, place, and time for the meetings, and the guidelines to be followed

during such meetings." The arbitrator may attempt to assist the parties in reaching settlement

before making his or her decision. As to the decision, it must be in writing and must contain "a

detailed list of the amount of money for each item in the claim that is subject to the appraisal."

This decision is binding "when two (2) of the three (3) parties (the insured's appraiser, the

insurer's appraiser, and the arbitrator) reach an agreement."

Sections E and F establish the arbitrator's duty of impartiality as well as competency and

suitability requirements. *Id.*, at 46-47. Section H requires that the insurer and insured pay the

arbitrator's fees in equal parts, that the fee agreement be reduced to writing before the appraisal

process begins, and that the fees be calculated according to the services rendered and the

complexity of the claim, capping such fees at $125 per hour (save for extraordinary cases). *Id.*, at

47. The Ruling Letter also prohibits fees based on the results on the amount recovered on the

claim or the value of the loss. *Id.*

With the applicable statutory and regulatory framework laid out above, the Court now proceeds to analyze whether the appraisal process is an arbitration for purposes of section 9 of the FAA.

### 2. *Fit Tech* analysis: final and binding remedy.

Two considerations are germane to determining whether the appraisal award is final and binding. First, the appraisal process is meant to determine only the value of the loss or damages in a claim, not the validity of the claim itself. Article 11.190(3) of the Insurance Code is clear in that the arbitrator may not decide issues of coverage or legal disputes. P.R. Laws Ann. t. 26, § 1119(3). That is to say, the whole of the dispute between the parties cannot be submitted to the arbitrator for resolution, which risks the bifurcation of the adjudication process.

Accordingly, an appraisal award does not automatically entitle an insurer to payment, as the actual obligation to pay does not stem from the arbitrator's determination of the value of the loss or damages. It may be a necessary step, but the enforcement of the obligation to pay is outside of the scope of an appraisal. In other words, after an appraisal award is issued, it is still up to the insurer to perform its obligation to the insured under the insurance contract—or, if the appraisal arises after the insured files a judicial complaint, the court must still resolve any outstanding legal controversies and enter judgment. If the insurer fails to do so after an appraisal, then the insured can file a complaint to demand payment, having already determined the value of the loss or damages by appraisal. In that sense, the appraisal award functions as a

kind of partial declaratory judgment, conclusively deciding the value of the loss or damages with respect to a claim.

Nonetheless, the First Circuit in *Fit Tech* deemed the partial nature of the accountant remedy a negligible factor in its analysis: "Yet arbitrations sometimes do cover only a part of the overall dispute between the parties. . . . If this adds to the procedural complexity, it may still provide a swifter (and depending on the arbitrator a more expert) answer to the questions that are arbitrated." *Fit Tech*, 374 F.3d at 7; *see also Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 14 (1st Cir. 2023) ("[A] partial award may qualify as final 'when the arbitrating parties have . . . agreed to litigate the issues in separate, independent stages.' This agreement to bifurcate proceedings may be 'informal.'") (quoting *Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*, 861 F.3d 287, 291 (1st Cir. 2017)). Applying that reasoning here, the fact that only part of a claim may be resolved via appraisal is no obstacle to recognizing an appraisal award as an arbitration award. The determination of the value of a loss or damages by an impartial adjudicator, usually one with specialized knowledge in the matter, is likely to be of considerable assistance in any related legal proceeding regarding the insurance claim. It allows the judge overseeing the case to focus on the legal disputes surrounding the claim rather than having to weigh the credibility and reliability of the parties' expert testimony and materials, saving all parties and the judiciary time and resources. Therefore, the partial nature of the appraisal procedure does not exclude it from being an arbitration.

The second germane consideration relates to the "binding" nature of the appraisal award. Both Act No. 242-2018 and the Ruling Letter provide that the appraisal award will be binding when two of the three parties to the appraisal (including the arbitrator) agree on the award. P.R. Laws Ann. t. 26, §1119(3); Ruling Letter, **ECF No. 1-1** at 44, 45. That is, a majority of the panel constituted for the appraisal decides its outcome—not unlike in arbitrations with panels of three or more arbitrators. *See*, *e.g.*, American Arbitration Association, Commercial Arbitration Rules (2022), R-46(a) ("When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement… a majority of the arbitrators must make all decisions.") and R-48(a) ("Any award shall be in writing and signed by a majority of the arbitrators."). That said, Article 11.190(3), by its own terms, is not clear on what enforcement mechanism, if any, is available for an appraisal award. It characterizes these as "binding" but also allows a non-conforming party to challenge them in court. And to add to the ambiguity, it does not specify what standard of review applies to a challenged appraisal award. The lack of a clear indication on the finality of the appraisal award contrasts with the finality of a typical arbitration award, which can only be vacated for the limited reasons set out in section 10 of the FAA, 9 U.S.C. § 10(a).[9]

---

[9] Of course, the First Circuit has "also recognized in earlier case law a second set of exceptions that flows from the federal courts' inherent power to vacate arbitral awards. This very narrow authority arises in cases where the arbitrator acted in manifest disregard of the law." *Axia Netmedia Corp. v. Massachusetts Tech. Park Corp.*, 973 F.3d 133, 141 n.9 (1st Cir. 2020) (internal citations, quotation marks and alterations omitted). However, the ongoing validity of this ground for vacatur is doubtful. *Id.*

Under these circumstances, the Court cannot decisively conclude that the appraisal award is a final and binding remedy given the non-conforming party's undefined ability to challenge the award in court. This factor, in balance, tilts neither in favor nor against finding that the appraisal is like an arbitration.

### 3. *Fit Tech* analysis: independent adjudicator.

Both Act No. 242-2018 and the Ruling Letter provide for the appointment of an "impartial and competent" arbitrator to preside over the appraisal process. *See* Act No. 282-2018, § 3 (**ECF No. 31-1** at 4); Ruling Letter, **ECF No. 1-1** at 46 ("All persons who act as an arbitrator in an appraisal process… shall be independent, impartial, competent, and objective."). Both establish requirements for arbitrators to safeguard their impartiality and objectivity. *See* Act No. 282-2018, § 1 ("Any person acting as an arbitrator in appraisal proceedings of property insurance claims shall exercise his or her duties with absolute impartiality and objectivity."); Ruling Letter, **ECF No. 1-1** at 46 (establishing certain prohibitions applicable to the arbitrator, such as having an economic interest in the claim or the result thereof). And the Ruling Letter further requires arbitrators to, among other things, comply with 12 hours of alternative dispute resolution training and, in case of property damage claims, be a licensed adjuster, engineer, architect, or real estate appraiser. *See* Ruling Letter, **ECF No. 1-1** at 46-47.

Under the FAA, an arbitrator's evident partiality or corruption is one of the limited grounds on which an arbitration award may be vacated. 9 U.S.C. § 10(a)(2). Commonly used arbitration rules contain strict imperatives on an arbitrator's duty of impartiality. *See*, *e.g.*,

American Arbitration Association, Commercial Arbitration Rules (2022), R-18 (requiring continuing disclosure by both parties and arbitrators of "any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives.") and R-19 ("Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for: (i) partiality or lack of independence, (ii) inability or refusal to perform his or her duties with diligence and in good faith, and (iii) any grounds for disqualification provided by applicable law.").

As to competence, the FAA does not impose such a duty on arbitrators. Parties are generally free to agree on the arbitrator without strict regard for his or her professional qualifications. For example, an arbitrator need not be a lawyer. But in practice, arbitrators are generally selected in good part for their experience, and it is not unusual to see arbitrators with specialized knowledge selected as arbitrators. *See Fit Tech*, 374 F.3d at 7 n.4 ("Selecting an expert to handle arbitration is by no means uncommon.").

Given the above, the Court concludes that the appraisal process is similar enough to an arbitration with regards to the independence of the arbitrator.

**4.  *Fit Tech* analysis: substantive standards.**

By substantive standards, the Court refers to the basis on which the arbitrator is called to make his or her decision. In *Fit Tech*, this aspect was mentioned in reference to the contractual

terms governing the arbitrator's appointment. *Fit Tech*, 374 F.3d at 7 (referencing "the contractual terms of the pay-out.").

Here, what the appraiser is called to determine is the value of the loss or damages. The appraiser cannot determine coverage or legal controversies. He or she must simply evaluate the evidence and come up with a calculation. In that sense, the object of the appraiser's mandate is clearly established. Moreover, the appraiser is not left to his or her own devices in the endeavor. The appraiser is called upon to consider "the documents, photos, estimates, expert reports, itemized lists, and amounts in dispute," and he or she may also inspect the property and make his or her own estimate. Ruling Letter, **ECF No. 1-1** at 45.

The Court considers that these requirements are sufficient to establish that the appraiser is bound by substantive standards in a similar way that an arbitrator is bound by the terms of the arbitration agreement.

### 5. *Fit Tech* analysis: opportunity to present case.

The opportunity for each party to be heard in an arbitration is one of its essential features. The First Circuit has held that the arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 39 (1st Cir. 1985). In fact, an arbitrator's refusal "to postpone the hearing, upon sufficient cause shown, or [to refuse] to hear evidence pertinent and material to the controversy" is one of the limited grounds for vacatur provided for in the FAA. *See* 9 U.S.C. § 10(a)(3). That said, this opportunity does not confer an

absolute right. For example, parties may agree to forgo a hearing and submit their dispute on the papers. *See, e.g.*, American Arbitration Association, Commercial Arbitration Rules (2022), Expedited Procedure E-6 ("Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary."). Parties may also expose themselves to an adverse award rendered in their absence by failing to participate in the hearing. *See id.*, at R. 32 ("Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement."). And the arbitrator generally has broad discretion to choose which evidence to hear and regulate the conduct of the proceedings. *See Hoteles Condado Beach, La Concha & Convention Ctr.*, 763 F.2d at 39 ("The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding."). All of this to say that an arbitration should provide a party a meaningful opportunity to present its case to the arbitrator, but the form in which that opportunity is validated is flexible. *See Doral Fin. Corp. v. Garcia-Vélez*, 725 F.3d 27, 32 (1st Cir. 2013) ("The 'fair hearing' requirement is rooted in due process concerns and thus calls for (1) notice, and (2) an opportunity to present relevant evidence and arguments.").

Here, the appraisal process established by the Ruling Letter contemplates an informal procedure where the party-appointed appraisers engage with the arbitrator through meetings, inspections, and recommendations. *See* Ruling Letter, § D.2(a), and (f) to (i), **ECF No. 1-1** at 3-5.

It also allows for the parties to appear in the process through counsel and to obtain court review of any matter of law during the pendency of the process (without paralyzing it, except by court order). *Id.*, at § D.2(l) and (m), **ECF No. 1-1** at 5. In the Court's view, the procedures available to both parties during the appraisal process translate to a meaningful opportunity to be heard. In that sense, the Court finds that the appraisal process is like an arbitration.

***

The above analysis of the four *Fit Tech* factors leads the Court to conclude that the appraisal process prescribed in the Ruling Letter is an arbitration for purposes of the FAA. Three of the four factors closely resemble a traditional arbitration: it provides for an independent adjudicator, contains sufficiently substantive standards for the arbitrator to apply, and affords each party an opportunity to present its case. The analysis on the remaining factor is, at best, ambiguous: the appraisal award is binding on the parties as per the plain text of Act 282-2018, but the law allows a party to challenge the award in court without providing any guidelines as to the standard of judicial review. Notwithstanding this ambiguity, the Court finds that the appraisal procedure, as a whole, it sufficiently comparable to an arbitration.

Accordingly, in this particular case, because respondent, after desisting from its attempt at vacating the appraisal award in *Cooperativa de Seguros Múltiples de Puerto Rico v. Floridian Public Adjusters, LLC, et al.*, Civ. No. 23-1615 (JAG) (D.P.R.), no longer opposes the confirmation of the award (**ECF Nos. 8** and **10**), the Court hereby **GRANTS** petitioner's motion to confirm the appraisal award.

**B.  Whether petitioner is entitled to reasonable attorney's fees.**

It now remains to be seen whether respondent must also pay petitioner a sum for attorney's fees, and if so, in what amount.

**1.  Article 27.165's requirements for attorney's fees.**

Puerto Rico's Act No. 247-2018 added two articles to the Insurance Code, namely, Articles 27.164 and 27.165, P.R. Laws Ann. t. 26, §§ 2716d, 2716e.[10] Article 27.164 provides a private cause of action for any insured prejudiced by several unlawful insurance practices. P.R. Laws Ann. t. 26, § 2716d. This private cause of action includes a self-contained mandatory attorney's fees provision, which provides that: "[u]pon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff." *Id.*, at § 2716d(4).

Article 27.165, for its part, created a broader, free-standing attorney's fees provision. For reference, Article 27.165 of the Insurance Code reads as follows:

> (1) When a judgment or decree is rendered by any court against an insurer, and in favor of any named insured or the beneficiary… the Court of First Instance, or in the case of an appeal where the insured or beneficiary are favored, the appeals court shall determine a reasonable amount of fees or compensation to be adjudicated or ordered against the insurer and in favor of the insured or his counsel for the prosecution of the action for which a remedy was granted. . . .
>
> . . .
>
> (3) When awarded, the compensation or attorney's fees shall be included in any judgment or decree rendered in the action.

---

[10] It also amended Article 38.050, P.R. Laws Ann. t. 26, § 3850, to add the defined terms "covered claim" and "insolvent insurer," neither of which is relevant here.

P.R. Laws Ann. t. 26, § 2716e.

All throughout this proceeding, petitioner has requested an award for "reasonable attorney's fees" pursuant to Article 27.165. **ECF Nos. 1**, **9, 13, 32**. Although petitioner's request was not always for a specific amount, he eventually argued that he is entitled to an award for attorney's fees in the range of 20% to 33% of the judgment or decree. **ECF No. 32** at 4-5. In support, petitioner argued that the Puerto Rico Supreme Court ("PRSC") consistently finds attorney's fees in the range of 20% to 33% to be reasonable. **ECF No. 35**.

Respondent opposes. It argues that Article 27.165 requires "prevailing party status" and that petitioner did not technically prevail in this case. **ECF No. 30** at 5-7; **ECF No. 10** at 3-4.[11] Respondent's discussion hinges on "federal case law requir[ing] prevailing status. . . ." **ECF No. 30** at 5-6. Specifically, respondent asserts that its "voluntary action of depositing with the Court the appraisal award. . ." automatically changed the landscape of the case. *Id.*, at 7. Respondent adds that, even if the Court entered an order of confirmation and a judgment to that effect, such judicial action "does not amount to a judicially sanctioned (judicial imprimatur) change in the legal relationship among the parties needed by plaintiff to establish the prevailing party status…." *Id*. Moreover, without reference to any authority, respondent contends that an award

---

[11] Respondent vaguely challenges the official translation of the codified statute at issue. **ECF No. 30** at 5. However, aside from counsel's interpretation, respondent did not proffer a certified translation or other authority to support its argument. Accordingly, any challenge to the official translation of the statute as codified is waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (cleaned up)). Respondent did not include any further challenge on this issue in his "Brief" at **ECF No. 34**.

"representing 20%-33% of the appraisal award in unconscionable" and "quite far from reasonable." **ECF No. 34** at 1-2.

The Court disagrees. The "prevailing party status" requirement relied upon by respondent is specific to the concept of fee-shifting as understood in federal law. It is a legal term of art developed under the notion that parties in federal cases are ordinarily required to "bear their own attorney's fees absent a fee-shifting authority." *Suárez-Torres v. Panadería Y Repostería España, Inc.*, 988 F.3d 542, 551 (1st Cir. 2021) (explaining what has been called the "American Rule"). To obtain "prevailing status," a party "must demonstrate (1) a material alteration of the legal relationship of the parties (2) that possesses the requisite judicial imprimatur." *Id*. And to ascertain the existence of "judicial imprimatur," courts "consider both the content and the context of the order" through factors such as "(1) whether the change in the legal relationship between the parties was court-ordered, (2) whether there was judicial approval of the relief vis-à-vis the merits of the case, and (3) whether there exists continuing judicial oversight and ability to enforce the obligations imposed on the parties." *Id.,* at 552 (quoting *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 9 (1st Cir. 2011)).

In support of its theory that a finding of "prevailing party status" is necessary, respondent's cites Supreme Court opinions concerning the American with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. ("ADA"), and other cases applying federal law. *See* **ECF No. 30** at 6 (citing *Buckhannon Bd and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001)); **ECF No. 34** at 1-4. However, federal law does not control here: ". . .the issue of

attorneys' fees has long been considered for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees." *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012) (in reference to *Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938)). Therefore, respondent's reliance on federal law is misplaced.

"Statutory construction in Puerto Rico begins with the text of the underlying statute, and ends there as well if the text is unambiguous." *In re Plaza Resort at Palmas, Inc.*, 741 F.3d 269, 274 (1st Cir. 2014). As per the plain text of Article 27.165, an award of attorney's fees requires only: (1) "a judgment or decree . . . by any court[,]" entered (2) "against an insurer[,]" and (3) "in favor of any named insured or the beneficiary[.]" P.R. Laws Ann. t. 26, § 2716e(1). Although this enunciation implicitly requires that the insured obtain a favorable ruling, the Court cannot, as a matter of textual interpretation, read into this provision a "prevailing party status" requirement as it is understood in several federal fee-shifting statutes.[12]

Further, the Court finds no reason, and respondent points to none, to incorporate the federal "prevailing party status" requirement to Article 27.165. Indeed, Article 27.165 is unambiguous as to when an award of attorney's fees is warranted, and there is no indication that the Puerto Rico Legislature intended to import the federal "prevailing party status" as a prerequisite. Therefore, as a matter statutory interpretation, the Court finds that petitioner need

---

[12] For example, the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973l (e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988.

not comply with the strictures of that concept. He must only obtain a favorable judgment or decree against an insurer.

For the sake of argument, even if Article 27.165 did require of petitioner a "prevailing party status" as understood under federal law, the facts surrounding the relatively long-running dispute between petitioner and respondent show that he would nonetheless be entitled to that status. First, from a factual standpoint, respondent's position fails to consider its initial refusal to pay petitioner the amount of the award and its recourse to the Puerto Rico courts to vacate the same. That challenge was lodged months before petitioner commenced the instant action. Petitioner had to devote time and resources not only to file its competing motion to confirm the appraisal award (the instant proceeding), but also to remove respondent's state-court case to the District Court. And once it was before the Hon. Judge Jay A. García-Gregory, on January 17, 2023, respondent decided to affirmatively continue its vacatur action against respondent, voluntarily dismissing the case against all defendants except petitioner. *See* Civ. No. 23-1615, at ECF No. 13. Moreover, after making a conscious decision to continue with its vacatur action against petitioner, respondent also moved to stay petitioner's confirmation request here. **ECF No. 3**. During all this time, respondent failed to comply with its payment obligations under the insurance policy (in the amount determined in the appraisal award) and affirmatively challenged petitioner's right to the awarded amount. In this context, the confirmation of the appraisal award certainly means that petitioner has prevailed against respondent's judicial challenges.

Respondent's theory also fails from purely legal perspective. First, instead of paying petitioner the amount of the award, respondent deposited the funds with the Court. In doing so, it placed the funds out of petitioner's immediate reach. Under Puerto Rico law, unless the deposit complied with the rigors of a lawful "consignation," respondent still owes petitioner payment of the appraisal award from a contractual standpoint. "Consignation is the legal deposit of the thing owed." *Prestige Capital Corp. v. United Sur. and Indem. Co.*, 245 F. Supp. 3d 349, 355 (D.P.R. 2017). If made properly, consignation may constitute payment and extinguish the credit, but for it to do so, both the 1930 Puerto Rico Civil Code as well as the current 2020 Civil Code require that before depositing the funds with the Court, the debtor offer to pay creditor and the creditor "refuse to accept it, without reason." P.R. Laws Ann. t. 31, § 3180 (repealed), 31 L.P.R.A. § 9181.[13] According to the parties' factual submissions, consignation did not materialize here because it was never offered to, and then rejected by, the petitioner. To that effect, respondent's deposit, although styled as a motion for "consignation," does meet the consignation requirements under Puerto Rico law. In other words, respondent still owes petitioner fulfillment of his payment obligation because the obligation has not been extinguished. It is this Court's entry of judgment granting petitioner's motion for confirmation—

---

[13] The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.*, and applicable to the facts of the case, entered into force on November 28, 2020, repealing the previous 1930 Civil Code. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023). However, the current version of the Civil Code has yet to be officially translated into English, which is why the Court will cite to the annotated Spanish-language compilation, "*Leyes de Puerto Rico Anotadas*" ("L.P.R.A.") and not the English-language compilation, "Puerto Rico Laws Annotated" ("P.R. Laws Ann.").

not respondent's "voluntary" actions—that will change the status quo and the legal relationship between the parties.

Finally, the Court notes that implicit in respondent's "prevailing party status" argument is the suggestion that its judicial deposit of the amount of the award, plus its acquiescence to their disbursement, have mooted petitioner's motion to confirm. The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). Mootness implies that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022) (cleaned up)). But respondent has failed to meet its heavy burden of proving mootness. *See Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (explaining that the party seeking dismissal under mootness bears the burden of proof). Where "the only conceivable basis for a finding of mootness . . . is the [respondent's] voluntary conduct," the burden of establishing mootness is a heavy one. *West Virginia v. EPA*, 597 U.S. at 719 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (cleaned up). This is because "a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *See Am. C.L. Union of Massachusetts*, 705 F.3d at 54 (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)).

Given the fact that respondent challenged the legal validity the appraisal award, failed to satisfy it, and placed the funds under judicial tutelage and out of reach of petitioner, its subsequent acquiescence to their withdrawal as payment does not operate to deprive petitioner of a personal stake in the outcome of the case. Petitioner very much continues to require judicial intervention to access the funds, and still seeks additional relief in the form of an award of attorney's fees, which respondent contests, and which the Court must include in its final judgment as per the text of Article 27.165.

***

For these reasons, the Court finds that petitioner is entitled to an award of reasonable attorney's fees pursuant to Article 27.165 of the Insurance Code. The Court must now determine what is a "reasonable" amount to award.

### 2.  Article 27.165's "reasonableness" requirement.

The only remaining question before the Court is whether an award of attorney fees in the range of 20% to 33% of the appraisal award as requested by petitioner is reasonable. Initially, no party took a position on what a "reasonable" amount would be, and neither did they cite any PRSC case law specifically interpreting Article 27.165.

"As a federal court sitting in diversity, 'we look to the pronouncements of a state's highest court in order to discern the contours of that state's law.'" *Hosp. San Antonio, Inc. v. Oquendo-Lorenzo*, 47 F.4th 1, 7 (1st Cir. 2022) (quoting *González Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 318 (1st Cir. 2009)). The Court thus must ascertain what rule Puerto Rico courts would

most likely apply. *See Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir. 1996); *Quality Cleaning Products R.C., Inc. v. SCA Tissue N.A., LLC*, 794 F.3d 200, 206 (1st Cir. 2015). To do so, it must "look to the pertinent statutory language and analogous decision of the Puerto Rico Supreme Court." *Hosp. San Antonio*, 47 F.4th at 7 (cleaned up).

### a. The text and spirit of Act 247-2018

As summarized above, Article 27.164 of Act 247-2018 provides a private cause of action for any person prejudiced by several unlawful insurance practices. P.R. Laws Ann. t. 26, § 2716d. This private cause of action includes a self-contained mandatory attorney's fees provision. To wit, "[u]pon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees **incurred** by the plaintiff." P.R. Laws Ann. t. 26 § 2716d(4) (emphasis added). Article 27.164 clearly asks the courts to calculate reasonable attorney's fees using a *quantum meruit* approach, or, arguably, the lodestar method.

On the other hand, Article 27.165 created a broad attorney's fees provision applicable to any judgment or decree that a court (trial or appellate) renders against an insurer in cases other than those filed under Article 27.164. P.R. Laws Ann. t. 26, § 2716e(1). In such cases, the court "shall determine a reasonable amount of fees or compensation to be adjudicated or ordered against the insurer and in favor of the insured or his counsel for the prosecution of the action for which a remedy was granted." *Id.*

The Puerto Rico Legislature could have limited the award of attorney's fees under Article 27.165 to the work performed by a plaintiff's attorneys or the amount fees "incurred" by them, as it did in Article 27.164. As evidenced by the difference in both statutes' text, it chose not to. Moreover, Article 27.165 makes particular reference to the "remedy . . . granted" by the Court. Therefore, a plain reading of the statute suggests that the reasonableness of an award of attorney's fees under Article 27.165 should be measured against the "remedy [that] was granted" as opposed to the fees "incurred" by plaintiff's counsel. *Id*.

This interpretation is bolstered by the spirit of Act 247-2018. The statute's Statement of Motives recognizes that the insurance companies' response to Hurricane María property insurance claims was "riddled with delays, mismanagement, and repeated violations of the provisions of our Insurance Code." *See* Statement of Motives, Act No. 247-2018 (emphasis added).[14] In light of the "**pattern of repeated violations by insurance companies**," the Legislature felt compelled to enact Act 247-2018 to include "**additional tools and protections**…." *Id*. (emphasis added).

Clearly, Act 247-2018 denounces local insurers for their conduct after Hurricanes Irma and María and creates additional protections for the insured against undesirable insurance practices and violations, such as delaying payment under the policy and delaying the investigation and adjustment of claims, among other practices. *See Feliciano Aguayo v. MAPFRE*

---

[14] An official translation of Act 247-2018 as approved by the Puerto Rico Legislature is available on file with the First Circuit librarian.

*Panamerican Insurance Company*, 207 P.R. Dec. 138, 152 (2021); P.R. Laws Ann. t. 26, § 2716a.[15] Awarding reasonable attorney's fees based on the amount awarded by a court, as mandated by Article 27.165, does just that.

Take this case for example. Although it had opportunity to do so, respondent refused to pay the petitioner for the damage to his property caused by Hurricane María over seven years ago. On top of that, respondent forced petitioner to defend against a civil action in state court and to file the instant action to collect the amounts that it admits are owed. Respondent now seeks to have the case dismissed without any award of attorney's fees, over the objections of petitioner who has been waiting seven years for his contractually due payment. In this context, employing a *quantum meriut* method to trim counsel's billed hours and placing a cap on his or her hourly rates seems incongruous with the aims the Puerto Rico Legislature set out to accomplish: to create "new tools and protections" against insurer's "delays, mismanagement, and repeated violations of the provisions of our Insurance Code." Accordingly, the Court concludes that Act 247-2018's plain text requires that an award of attorney's fees under Article 27.165 be calculated upon the amount awarded in the judgment.

### b. The Puerto Rico Supreme Court's rejection of the lodestar method.

Other considerations support the Court's conclusion and shed light on what a "reasonable" sum for attorney's fees could be under Article 27.165. Apart from Act 247-2018 itself, there is one other legal provision for attorney's fees relevant to this question: Rule 44.1(d)

---

[15] An official translation of *Feliciano Aguayo* is available on file with the First Circuit librarian.

of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann. t. 32A, R. 44.1(d). In general terms, Rule 44.1(d) commands the imposition of a "payment of a sum in attorney's fees" against a party or attorney in cases where the party or the attorney "has acted obstinately or frivolously." *Id.*; *see also CH Properties, Inc. v. First Am. Title Ins. Co.*, 214 F. Supp. 3d 111, 114 n.1 (D.P.R. 2016) ("Attorney's fees, however, are only awarded if the Court concludes that a party has acted obstinately.") (citing *Sucn. Arroyo v. Mun. de Cabo Rojo*, 81 P.R. Dec. 434, 438 (1959)). In such cases, the court "must" award attorney's fees in an amount that "correspond to such conduct." *Id*. However, Rule 44.1(d) does not include a specific amount or calculation method.

Rule 44.1(d) is not controlling nor a model to follow here because a special law governs the specific issue. In Puerto Rico, a special law controls over general law. *See Córdova & Simonpietri v. Crown American*, 112 P.R. Dec. 797, 12 P.R. Offic. Trans. 1003, 1007 (P.R. 1982). But Rule 44.1(d) does serve to illuminate an important point: that the PRSC does not favor the lodestar method. Indeed, that court has explicitly refused to adopt the lodestar method as a means to calculate a Rule 44.1(d) attorney's fees award. *See Corpak, Inc. v. Ramallo Bros. Printing, Inc.*, 125 P.R. Dec. 724, 738, P.R. Offic. Trans. at 4-5, 8-12 (P.R. 1990) (rejecting the *Lindy Bros. Bldrs., Inc. or Phila. v. American R. & S. San. Corp.*, 487 F.2d 161 (3rd Cir. 1973)'s "lodestar" method, the *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) variation, and the "hybrid approach" resulting from the combination of the two cases); *see also Carrero v. Molina Healthcare of Puerto Rico, Inc.*, 737 F. Supp. 3d 135, 144 n.4 (D.P.R. 2024) ("[T]he Puerto Rico Supreme Court rejected the lodestar method for determining attorney's fees under Puerto Rico

Rule of Civil Procedure 44.1.").[16] Particularly. the PRSC has also rejected the lodestar method or variations thereof as a primary method for calculating attorney's fees under local fee-shifting statutes that only require the amount be "reasonable".

In *López Vicil v. ITT Intermedia, Inc.*, 142 P.R. Dec. 857 (1997), the PRSC awarded attorney's fees to an employee plaintiff under Act No. 100 of June 30, 1959, P.R. Laws Ann. t. 29, § 146 *et seq* ("Act 100"). Act 100 entitles employees to a reasonable amount of attorney's fees if they prevail in their employment discrimination case. After carefully considering the procedural background and the fact that attorneys in employment cases are compensated by statute, the PRSC increased the attorney's fee award granted by the lower court from $15,000.00 to $20,000.00.[17] The Court did not elaborate on a test to be applied in the future.

Via reconsideration, however, the PRSC issued a seminal Opinion that has paved the way for practically all Puerto Rico court decisions dealing with attorney's fees. In relevant part, *López Vicil II*, 143 P.R. Dec. 574 (1997); 1997 P.R.-Eng. 189, 488, 43 P.R. Offic. Trans. 43, serves to reinforce this Court's conclusion that the PRSC would not apply the lodestar method to Act 247-

---

[16] Not only does the PRSC reject the lodestar method, but it has criticized it explicitly. In *Corpak, Inc*, it stated:

> [A]side from the fact that application of said method in the federal sphere has seriously upset the administration of justice, and has become quite a problem therein, we have that the language and purpose of the pertinent provisions of our laws that authorize attorney's fees awards are substantially different from the federal statutes--the so-called Federal Fee-Shifting Statutes-upon which the cited federal methodology is based. . . .

*Corpak, Inc.*, 125 P.R. Dec. at 738, P.R. Offic. Trans. at 4-5, 8-12.

[17] The original Opinion's official translation is merged with that Court's Opinion in reconsideration. *See* 143 P.R. Dec. 574 (1997); 1997 P.R.-Eng. 189,488, 43 P.R. Offic. Trans. 43.

2018 attorney's fees awards and would, instead, set them as a reasonable percentage of the judgment award. *López Vicil II* established an objective test to determine "reasonable attorney's fees" under Act 100 as a "just compensation" for the attorneys'work. *Id.* Leaving out the procedural history or the time spent by the attorneys in litigating the case, the PRSC decided to set out a "clear-cut test[] to guide courts when determining reasonable attorney's fees. . . ." *Id.*, at 1.

After examining the lodestar method, the *Johnson* variation, a combination of the two, and the First Circuit's opinion in *Lipsett v. Blanco,* 975 F.2d 934 (1st Cir. 1992) (dealing with a party's obstinate "Stalingrad defense" in litigation), the PRSC took a step in the opposite direction. It established a 25% attorney's fee award of the base judgment compensation regardless of the work performed by the attorneys. The PRSC noted that "assessing attorney's fees in twenty-five percent (25%) of the base compensation in this type of case allows workers to vindicate their rights, and justly compensates attorneys who devote their work and effort to this type of claim." *Id*. In reaching its determination, the PRSC took notice of a parallel employment statute's mandatory 15% attorney's fee award and noted that cases under Act 100 are more complex in nature:

> [A]s a rule, discrimination cases are more complex and expensive . . . generally require costly discovery . . . the attorneys of the plaintiff workers usually have fewer means than the attorneys of the employers. By establishing that the losing employer shall pay a reasonable amount for the plaintiff's attorney's fees, Act No. 100 seeks to offset this economic disadvantage.

*Id.*[18] Moreover, the PRSC held that 25% is only the minimum amount, and in cases where "the effort made, the exceptional impact or result of the case, or the confrontation with a hostile defense, warrant a greater fee award, the attorney may… [seek] fees based on the number of hours worked." *Id*. The factors to consider if the award of attorney's fees sought should surpass the 25% of the base compensation are akin to the analysis under the lodestar method, but they only apply to this "extra" portion of the attorney's fees award already mandated by statute.[19]

All of this supports the Court's conclusion that the application of the lodestar method to Article 27.165 would be incongruous with PRSC precedent regarding similar Puerto Rico statutes.

\*\*\*

In light of the text of the statute and the fact that this Court found no PRSC case applying the lodestar method as a primary method of calculation to a Puerto Rico fee-shifting statute, this Court can only make "informed prophecy" that the Puerto Rico Supreme would interpret Article

---

[18] *López Vicil II*'s 25% floor has been applied by state courts to other employment statutes' fee-shifting provisions requiring "reasonable" attorney's fees. *See* Working Mother's Protection Act No. 3-1942, P.R. Laws Ann. t. 29, § 472. Moreover, state courts have applied the subjective portion of the *López Vicil* test (applicable when an attorney seeks more than 25% in attorney's fees) to enlarge statutory provisions that commands a default 15% or $100.00 (whichever is higher) for attorney's fees. *See Hernández Maldonado v. Taco Maker*, 181 P.R. Dec. 281 (P.R. 2011) (discussing Act No. 80-1976, P.R. Laws Ann. tit. 29 § 185k); *see also* P.R. Laws Ann. t. 3, § 320 (establishing a 25% attorney's fees award when the applicable law for the adjudication of a complaint or controversy in mediation or conciliation does not provide for the payment of the fees of the claimant worker's attorney).

[19] Although they are very similar, the Court would not go so far as to say that *López Vicil II* adopted the lodestar method *per se*. It is true that *López Vicil II* carefully described the lodestar method, but it also underscored its many flaws and ultimately rejected it. Instead of asking Puerto Rico courts to apply lodestar in granting fees over the 25% floor, the PRSC took pains to sketch out a specific framework for that task.

27.165 as requiring a reasonable award of attorney's fees based on the judgment or remedy.[20]

*Blinzler*, 81 F.3d at 1151. Given the above and in consideration of the time spent by petitioner in obtaining payment of the owed amounts and the complexities inherent in insurance litigation, the Court finds that 25% of the judgment or remedy granted is a reasonable amount for attorney's fees under Article 27.165.[21]

## III.    Conclusion

For the reasons stated above, the Court **GRANTS** petitioner's motion to confirm the appraisal award at **ECF No. 1**. Accordingly, after applying any applicable registry fee, the Clerk of Court shall disburse to petitioner the full amount of funds deposited. Further, petitioner's request for reasonable attorney's fees under Article 27.165 of Puerto Rico's Act No. 247-2018,

---

[20] Petitioner provided some other examples relevant to this analysis. *See* **ECF No. 35** at 2 ("[T]he Supreme Court of Puerto Rico referenced three laws in which percentages of reasonable attorney's fees range between 20 and 33%: (i) Section 4111 of the Insurance Code of Puerto Rico, Act 247-2018, 26 L.P.R.A. § 4111, setting the attorney's fees to be awarded in cases of medical malpractice at a scaled range starting at 20% and capped at 33%; (ii) the Claims and Suits against the State Act, Act 9-1975, 4 L.P.R.A. § 747, setting the maximum award of attorney's fees in tort cases at 33% of the total award, or 25% if the plaintiff is a minor or mentally incapacitated; and (ii) the Consumer Class Action Litigation Act, Act 118- 1971, 32 L.P.R.A. § 3343, setting attorney's fees at a reasonable rate that shall never be less than 25% of the total award. *Id.*").

[21] The Court recognizes that it was initially tempted to apply the First Circuit's "lodestar" or a similar *quantum meruit* calculation method given Act 247-2018's "reasonableness" requirement, as sister District Courts have done when addressing Puerto Rico fee-shifting statutes. *See Carrero v. Molina Healthcare of Puerto Rico, Inc.*, 737 F. Supp. 3d at 143-44 (applying the lodestar method to a private agreement that contained an attorney's fee provision); *Casco, Inc. v. John Deere Constr. & Forestry Co.*, 596 F. Supp. 3d 359, 374 (D.P.R. March 31, 2022) (applying lodestar to a Puerto Rico fee-shifting statute in accordance with the Legislature's stated intent). However, those cases are distinguishable, and the text of the statute, the legislative intent, and the PRSC's heavy criticism and repeated rejection of the lodestar method counsel a different outcome here. *See Blinzler*, 81 F.3d at 1151 ("[T]o ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the question might differ").

P.R. Ann. t. 26 § 2716e, is **GRANTED**. In consequence, respondent is **ORDERED** to pay

petitioner the amount of $154,241.67 in reasonable attorney's fees.[22]

      **SO ORDERED**.

      At San Juan, Puerto Rico, on this 25th day of March, 2025.

                                **S/AIDA M. DELGADO-COLÓN**
                                  **United States District Judge**

---

[22] This award is calculated based on the amount of the award plus the amount of post-award interests that was agreed to by the parties in this case.